IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFROW THOMAS,<br>    Plaintiff,<br><br> vs.<br><br>MR. JOHN WALTON, Warden; MR.<br>STEVEN CMAR, Deputy Warden; MR.<br>BILL NICHOLSON, Medical Supervisor;<br>MR. MIKE KUSMA, Physician Assistant;<br>MS. GAIL GASKILL, Nurse,<br>    Defendants. | )<br>)<br>)<br>) Civil Action No. 12-41<br>) Judge Terrence F. McVerry<br>) Magistrate Judge Maureen P. Kelly<br>)<br>)<br>)<br>) ECF No. 26<br>) |

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

  Plaintiff Jeffrow Thomas ("Plaintiff") is an inmate in the custody of the Pennsylvania Department of Corrections and is currently incarcerated at the State Correctional Institution at Huntingdon in Huntingdon, Pennsylvania. Plaintiff filed this civil rights action against Defendants Mr. John Walton, Warden ("Walton"); Mr. Steven Cmar, Deputy Warden ("Cmar"); Mr. Bill Nicholson, Medical Supervisor ("Nicholson"); Mr. Mike Kusma, Physician Assistant ("Kusma"); and Ms. Gail Gaskill, Nurse ("Gaskill") (collectively, "Defendants"), alleging that Defendants failed to provide him with proper medical treatment in violation of his rights provided by the First, Eighth and Fourteenth Amendments to the United States Constitution while he was incarcerated at the Westmoreland County Prison in Greensburg, Pennsylvania.

  Presently before the Court is a Motion to Dismiss ("the Motion") submitted by Defendants. ECF No. 26. For the reasons that follow, is respectfully recommended that the Motion be granted.

## II. REPORT

### A. PROCEDURAL BACKGROUND

Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* on January 12, 2012, which was granted by this Court on March 16, 2012. ECF Nos. 1, 2. The Complaint was filed on March 19, 2012. ECF No. 3.

On July 27, 2012, Plaintiff filed a Motion for Leave to file an Amended Complaint which this Court denied insofar as Plaintiff did not need to seek leave of Court to amend the Complaint at that juncture. ECF: 7/30/2012 Text Order. Plaintiff was also advised that any amendment he filed must include all the claims he wished to raise and name all the Defendants against whom he wished to proceed in a single comprehensive document. Id. On August 20, 2012, rather than file an amended complaint, Plaintiff filed another Motion for Leave to File an Amended Complaint. ECF No. 18. The Court granted that motion on September 4, 2012, and ordered Plaintiff to file an amended complaint on or before September 18, 2012. Plaintiff was again advised to include all the claims he wished to raise and name all the Defendants against whom he wished to proceed in the amended complaint. ECF: 9/4/2012 Text Order. In addition, Plaintiff was advised that his failure to file an amended complaint in accordance with the Court's order would render the Complaint he originally filed the operative complaint. Id.

Plaintiff again failed to file an amended complaint but instead, on September 17, 2012, filed yet another Motion for Leave to file an Amended Complaint, which consisted of a one-paragraph summary of the claims raised in the original Complaint. ECF No. 22. Finding that it was apparent from Plaintiff's failure to file an amended complaint, despite being given several opportunities to do so, and his repeated recapitulation of the claims raised in the original Complaint that he had no new claims to raise, the Court denied Plaintiff's Motion for Leave to

File an Amended Complaint and deemed the original Complaint, ECF No. 3, the operative Complaint in this matter. ECF No. 24.

In the Complaint, Plaintiff alleges that Defendants violated his rights provided by the First, Eighth and Fourteenth Amendments to the Constitution by failing to provide him with proper medical treatment after he fell on the staircase leading to his cell at the Westmoreland County Prison on January 27, 2010. Specifically, Plaintiff faults Defendants for failing to provide him with adequate pain medication and for refusing his requests to be seen by an outside health care provider.

Defendants filed the instant Motion on October 18, 2012, to which Plaintiff responded on December 10, 2012. ECF Nos. 26, 33. As such, the Motion is now ripe for review.

**B.  STANDARD OF REVIEW**

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim

to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

**C.      DISCUSSION**

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id.

1.      **First and Fourteenth Amendment Claims**

In the instant case, although Plaintiff has alleged in the Complaint that Defendants deprived him of his rights secured by the First, Eighth and First Amendments to the Constitution, he has indicated in his response to the instant Motion, that he is only pursuing his claims relative to the Eighth Amendment. ECF No. 33. Accordingly, Defendants' Motion is properly granted with respect to Plaintiff's First and Fourteenth Amendment claims.

2.      **Eighth Amendment Claims**

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated and, thus, dictates that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Thus, in order to establish an Eighth Amendment violation, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), *citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991). Deliberate indifference exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical

treatment." Rouse v. Plantier, 182 F.3d at 197. Inconsistencies or differences in medical diagnoses, short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction, however, do not amount to cruel and unusual punishment. Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey, 2012 WL 2374689, at * 9 (D.N.J. June 13, 2012). Nor do allegations of negligence or medical malpractice. See Spruill v. Gillis, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable); Rouse v. Plantier, 182 F.3d at 197, quoting Estelle v. Gamble, 429 U.S. at 105 (allegations of negligence and medical malpractice are not sufficient to establish a Constitutional violation as the "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' . . ."). As such, allegations that the inmate was provided with medical care, but the care was "inadequate" fails to state a cognizable claim. See Taylor v. Visinsky, 422 F. App'x 76, 78 (3d Cir. 2011).

With these standards in mind, it is apparent that Plaintiff has failed to state an Eighth Amendment claim against any of the Defendants.

      **a.    Claims against Defendant Walton**

To support his Eighth Amendment claim against Defendant Walton -- in particular, that Walton was aware of, and disregarded, his need for medical treatment -- Plaintiff asserts in the Complaint that he submitted a Request to Staff to Walton dated April 21, 2010, wherein he explained that he fell down the stairs in January of 2010, at which time he hurt his back and that he was in pain all the time. ECF No. 3, ¶ 24. Plaintiff also contends that Walton was informed of Plaintiff's alleged plight through the appeal of a grievance he filed on June 1, 2010. Id. at ¶¶

33, 40. Plaintiff then concludes that Walton, who he notes is the supervisor of the other Defendants, was deliberately indifferent to Plaintiff's medical needs by thereafter denying him treatment. Id. at ¶ 42.

In addition to these allegations, Plaintiff has attached to the Complaint a copy of the Request to Staff dated April 21, 2010, that he submitted to Walton, which indicates that Plaintiff also informed Walton that the pain medication he was receiving was not working, and that he complained of not being taken to an outside hospital despite his requests. ECF No. 3-9. Plaintiff has also submitted a copy of the grievance appeal he submitted to Walton in June of 2010, in which he also complains about the lack medical treatment he was receiving. ECF No. 3-16.

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), *quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). See Ruff v. Health Care Adm'r, 441 F. App'x 843, 846 (3d Cir. 2011) (per curiam) ("[t]o be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct").

Consequently, "liability cannot be predicated solely on the operation of respondeat superior.'" Evanchco v. Fisher, 423 F.3d at 353, *quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, a supervisor can only be held liable if his or her own actions resulted in the constitutional injury. Baraka v. McGreevey, 481 F.3d at 210. Thus, a supervisor may be found liable where he or she "participated in violating the plaintiff's rights, directed

7

others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See Plouffe v. Cevallos, 2012 WL 1994785, at *4 (June 1, 2012), *quoting* Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010). Under either theory, there must be both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate. Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988), *impliedly overruled on other grounds by* Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).

Moreover, the United States Court of Appeals for the Third Circuit has held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). See Spruill v. Gillis, 372 F.3d at 236 ("[a]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [ ] will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference").

In the instant case, although Plaintiff may have informed Walton in his Request to Staff that he was still in pain after he fell down the steps, it is also clear that he informed Walton that he was being seen by the medical staff and was receiving medication. Having been apprised by Plaintiff that he was being treated for his pain by the medical department, it cannot be said that Walton was aware of any constitutional violation or that his failure to respond to Plaintiff's complaints demonstrates deliberate indifference to Plaintiff's medical needs. See Durmer v. O'Carroll, 991 F.2d at 68. At best, Plaintiff's allegations show that he was unhappy with the

treatment he was receiving which, as previously discussed, is insufficient to state an Eighth Amendment claim. See Spruill v. Gillis, 372 F.3d at 235; Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey, 2012 WL 2374689, at *9.

Further, although Plaintiff has submitted the appeal of the grievance he filed on June 1, 2010, in which he complained of the lack of medical treatment he was receiving and which was reviewed by Walton, it is clear that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct. Rode v. Dellarciprete, 845 F.2d at 1207. See Ramos v. Pennsylvania Dep't of Corr., 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) ("review and denial of the grievances and subsequent administrative appeal conducted does not establish personal involvement by those Defendants in the alleged underlying unconstitutional conduct"); Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (finding that allegations that the defendants denied the plaintiff's appeal of his grievance was insufficient to establish the defendant's personal involvement in the challenged conduct); Watkins v. Horn, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement).

In addition, it should be pointed out that in his response to Plaintiff's appeal, Walton noted that following Plaintiff's fall he was given a variety of pain medications; had x-rays taken of his lumbar spine, c-spinal and left hip; was given a wheelchair; and was moved to the medical department. ECF No. 3-17. Although it appears that the wheelchair was taken away from Plaintiff on March 18, 2010, for a brief period of time, it was subsequently returned to him. Id. Walton also indicated that Plaintiff's x-rays all came back negative showing that no outside treatment or more extensive treatment was necessary. Id. Plaintiff's treatment was nevertheless

9

reviewed by the NaphCare Medical Director, Dr. Robert McGrath, who found that Plaintiff was receiving proper care for his injury. Id. Plaintiff does not take issue with Walton's observations in this regard and, as such, Plaintiff's Eighth Amendment claims against Walton are properly dismissed.

### b. Claims against Defendant Cmar

Similarly, the only allegations that appear in the Complaint against Defendant Cmar is that that Plaintiff submitted a Request to Staff dated April 9, 2010, wherein he explained to Cmar that he fell down the stairs in January of 2010, hurting his back and that he is in pain all the time. ECF No. 3, ¶ 22. Plaintiff also contends that Cmar was informed of his lack of medical treatment through the grievance he filed on May 21, 2010. Id. at ¶¶ 29, 30, 40. Plaintiff then concludes that Cmar was deliberately indifferent to Plaintiff's medical needs by thereafter denying him treatment. Id. at ¶ 43.

Plaintiff has also attached to the Complaint a copy of the Request to Staff dated April 9, 2010, that he submitted to Cmar in which he informed Cmar that the pain medication he is receiving is not working and complained that he has never been taken to an outside hospital despite his requests. Plaintiff has also submitted the grievance he filed on May 21, 2010, in which he also complained about the lack medical treatment he was receiving. ECF Nos. 3-7; 3-11.

As found with respect to Defendant Walton, although Plaintiff may have informed Cmar that he was still in pain after he fell down the steps, it is also clear that he informed Cmar that he was being seen by the medical staff was receiving pain medication. Thus, Plaintiff's Request to Staff does not serve as notice to Cmar that his constitutional rights were being violated and, Cmar's failure to respond to Plaintiff's complaints does not evidence deliberate indifference to

Plaintiff's medical needs.  See Durmer v. O'Carroll, 991 F.2d at 68.  While Plaintiff may not have agreed with the treatment he was receiving and may have preferred a different medication, these averments are insufficient to state an Eighth Amendment claim.  See Spruill v. Gillis, 372 F.3d at 235; Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey, 2012 WL 2374689, at *9.

Moreover, to the extent that Plaintiff alleges that Cmar was aware that his constitutional rights were being violated because Cmar was privy to the grievance Plaintiff filed on May 21, 2010, in which Plaintiff complained that he did not have access to a "real" doctor or "real" medication and that he was not offered a "walking device," his claim also fails.  See ECF No. 3-11.  Not only is reviewing a grievance insufficient to confer personal knowledge of a constitutional violation upon a defendant, Rode v. Dellarciprete, 845 F.2d at 1207, but in responding to the grievance, Cmar, as well as the Deputy Wardens of Treatment and Operations, indicated that following Plaintiff's fall he was fully examined by Nurse Spennati, Defendant Gaskill and by both Defendants Nicholson -- the NaphCare Medical Director -- and Kusma; that both assessments showed no visible signs of injury; that, because of Plaintiff's complaints of pain, x-rays were ordered as a precaution; and that the x-rays were negative leading the medical staff to conclude that Plaintiff's injuries were not serious enough to warrant a hospital transport. ECF Nos. 3-12; 3-13.  In addition, Plaintiff's complaint that he was not offered a walking device is seemingly belied by his allegations in the Complaint that Defendants Kusma and Nicholson provided him with a wheelchair in lieu of a cane or walker.  ECF No. 3, ¶ 16.  Under these circumstances, it cannot be said that Cmar was aware of and/or acquiesced in violations of Plaintiff's constitutional rights.  As such, Plaintiff's Eighth Amendment claims against Cmar are properly dismissed as well.

### c. Claims against Defendant Nicholson

Plaintiff's allegations in the Complaint against Defendant Nicholson are as follows: that while Plaintiff was waiting outside the medical department, where he was transported after his fall, and groaning in pain, Nicholson asked Plaintiff "if he wanted to go back and lay down until the doctor comes in?;" that Nicholson told Plaintiff on January 31, 2010, that his x-rays came back negative and, consequently, there was no need to send Plaintiff to an outside health care provider; that on that same date, although Nicholson refused Plaintiff's request for a cane or walker, he provided Plaintiff with a wheelchair; and that on March 18, 2010, Nicholson directed that the wheelchair be taken away. ECF No. 3, ¶¶ 11, 15, 16, 18. Plaintiff then concludes that Nicholson was deliberately indifferent to Plaintiff's medical needs by not providing him with proper medical treatment. Id. at ¶ 44. In addition, it is apparent from the grievance Plaintiff filed on May 21, 2010, that he also faults Nicholson for failing to provide him with adequate pain medication. ECF No. 3-11. These assertions, however, do not give rise to a finding that Nicholson was deliberately indifferent to Plaintiff's medical needs.

It is well established that an inmate does not have a constitutional right to see a doctor on demand or the doctor of his choice. McNeil v. Redman, 21 F. Supp. 2d 884, 887 (C.D. Ill. 1998) (an inmate has no constitutional right to see a doctor on demand). See Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey, 2012 WL 2374689 at *9. Nor is an inmate entitled to a particular course of treatment or to have particular tests performed. Jetter v. Beard, 130 F. App'x 523, 526 (3d Cir. 2005), *cert. denied*, 546 U.S. 985 (2005) (noting that while plaintiff would have preferred a different course of treatment, his preference does not establish an Eighth Amendment cause of action); Pilkey v. Lappin, 2006 WL 1797756 at *2 (D.N.J. June 26, 2006) ("refusal to consider inmate's self-diagnoses," or "to perform tests or procedures that the inmate

desires" does not amount to cruel and unusual punishment). Rather, "the decision whether to summon a doctor, like the question of whether certain diagnostic technique or form of treatment should be prescribed, 'is a classic example of a matter for medical judgment,'" and does not give rise to an Eighth Amendment violation. McNeil v. Redman, 21 F. Supp. 2d 884, 887 (C.D. Ill. 1998), *quoting* Estelle v. Gamble, 429 U.S. at 107. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (disagreements over medical judgment do not state Eighth Amendment claims); U.S. ex rel. Hyde v. McGinnis, 429 F.2d 864, 866, 867-68 (2d Cir. 1970), *quoting* Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968) ("[a] difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983"; the conduct must be so harmful that it should be characterized as a barbarous act that shocked the conscience); Hasty v. Johnson, 103 F. App'x 816, 817-18 (5th Cir. 2004) (prisoner failed to state a claim for deliberate indifference to his medical needs where he alleged that medical personnel provided him with purportedly less efficacious drugs for gastroesophageal reflux disease as the prison medical personnel clearly provided him with treatment). Moreover, the United States Court of Appeals for the Third Circuit has held that, under the deliberate indifference standard, prison medical authorities have "considerable latitude" in exercising this judgment in the diagnosis and treatment of inmate patients and that Court's should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment which remains a question of sound professional judgment." Carter v. Smith, 2012 WL 1864006, at *1 (3d Cir. May 23, 2012), *quoting* Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (citation omitted).

  Here, as evidenced by the Complaint and the documents that Plaintiff has attached thereto, he was evaluated by four different individuals, given x-rays and a wheelchair, and

treated with a variety of pain medications after his fall. The fact that he was not given the pain medication he would have preferred or seen by an outside doctor as he would have liked does not mean that he was not receiving care or that Nicholson was deliberately indifferent to his medical needs, particularly where the results of the x-rays taken were negative for any serious injury.[1] Moreover, although Plaintiff complains that the wheelchair was taken away from him on March 18, 2010, it is also clear that it was returned to him shortly thereafter. As such, Plaintiff's Eighth Amendment claims against Nicholson are properly dismissed. See Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey, 2012 WL 2374689 at *9.

### d. Claims against Defendant Kusma

With respect to Defendant Kusma, Plaintiff has alleged in the Complaint that he was seen by Physician Assistant Kusma within four hours after his fall;[2] that, having seen Plaintiff's eyes water upon touching his back and legs, Kusma ordered x-rays and Tylenol with codeine for Plaintiff's pain; that Kusma told Plaintiff on January 31, 2010, that his x-rays came back negative and, consequently, there was no need to send Plaintiff to an outside health care provider; that, on that same date, Kusma provided Plaintiff with a wheelchair instead of the cane

---

[1] Indeed, Nicholson noted in a report he made to Cmar dated April 22, 2010, that although Plaintiff was receiving narcotic pain medication prior to his incarceration, narcotics are not an option at the Westmoreland County Prison unless specifically clinically indicated which was not true in Plaintiff's case. ECF No. 3-13. Furthermore, although Plaintiff contends that Nicholson's report contained false statements, namely, that the unit officers immediately called out a "code blue" when Plaintiff fell down the stairs, and that Defendant Kusma examined Plaintiff shortly thereafter, Plaintiff's complaints in this regard, even if true, do not serve to revitalize his Eighth Amendment claims against Nicholson. ECF No. 3-13. Not only is it unclear in what manner Plaintiff claims Nicholson's statement that a code blue was called out is false, but to the extent that Plaintiff claims it was because the call was not made *immediately*, Nicholson has not stated in his report that the call was made immediately. Id. In addition, although Plaintiff claims Defendant Kusma was not in the Westmoreland County Prison when Nicholson states that Kusma examined Plaintiff, Plaintiff himself has acknowledged in the Complaint that he was seen by Kusma between 4:30 p.m. and 5:00 p.m. on the day he fell. ECF No. 3, ¶¶ 12, 27, 28. More importantly, neither of these allegedly false statements negate Nicholson's other representations in his report, with which Plaintiff takes no issue, that Plaintiff was taken to the medical department shortly after his fall, seen by Nicholson within twenty minutes, and that x-rays were ordered. ECF No. 3-13. Nor does it negate the fact that Plaintiff has subsequently been provided medication for his pain. See ECF No. 3-17.

[2] It bears repeating here that Plaintiff was assessed by Nurse Spennati and Defendant Gaskill as well as Defendant Nicholson in the interim. ECF No. 3-13.

14

or walker Plaintiff requested; and that Plaintiff was without pain medication from January 31, 2010 until February 5, 2010, because Kusma failed to reorder it when Plaintiff was discharged from the medical department. ECF No. 3, ¶¶ 12, 15, 16, 17. Plaintiff then concludes that Kusma was deliberately indifferent to Plaintiff's medical needs by not providing him with proper medical treatment. Id. at ¶ 45.

These assertions, however, at best suggest only that Kusma was negligent in failing to reorder Plaintiff's pain medication upon discharge from the medical department, which fails to state an Eighth Amendment claim. See Spruill v. Gillis, 372 F.3d at 235. Moreover, although Plaintiff alleges that Kusma's negligence left him without medication for six days between January 31, 2010 and February 5, 2010, the evidence shows, that Plaintiff received 1000 mg of Acetaminophen for pain on January 28, 2010 through February 1, 2010. ECF No. 30-17. Hence, even if Kusma had neglected to reorder Plaintiff's pain medication, by his own Complaint it appears that Plaintiff nevertheless received medication on at least two of the days he claims he did not thereby leaving him without medication for four days. Short delays or inadvertent failure to provide adequate treatment, however, does not amount to cruel and unusual punishment. See Rouse v. Plantier, 182 F.3d at 197; Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey, 2012 WL 2374689 at *9.

Moreover, as previously discussed, the Complaint and the documents Plaintiff has attached thereto establish that after his fall Plaintiff was evaluated by four different health care providers, given x-rays, and treated with a variety of pain medications. The fact that he was not given the pain medication he would have liked or seen by an outside doctor as he would have liked does not mean that he was not receiving care or that Kusma was deliberately indifferent to his medical needs. This is particularly true here where the results of the x-rays he was given

15

were negative for any serious injury. As such, Plaintiff's Eighth Amendment claims against Kusma are properly dismissed.

### e. Claims against Defendant Gaskill

The allegations in the Complaint brought against Defendant Gaskill are even less compelling. Plaintiff alleges in the Complaint only that when Nurse Gaskill came to the medical holding cell to retrieve him for x-rays on the evening of his fall, she pulled on his legs in an effort to get him into the wheelchair, which hurt his back and legs even more, and that when he complained to her she replied that she didn't care, that it was her job to get Plaintiff into the wheelchair and that's what she was going to do. ECF No. 3, ¶ 13. Plaintiff also alleges that Gaskill stated that she didn't want to hear anything from Plaintiff and that he complained too much. Id. As with the other Defendants, Plaintiff then concludes that Gaskill was deliberately indifferent to Plaintiff's medical needs by not providing him with proper medical treatment and medication. Id. at ¶ 46.

Although Gaskill's handling of Plaintiff may have been indelicate, it does not show that she was deliberately indifferent to Plaintiff's medical needs. Indeed, Gaskill not only fully assessed Plaintiff after the fall but, according to Plaintiff's own assertions in the Complaint, Gaskill's inappropriate treatment of him occurred while she was there to take Plaintiff for x-rays. See ECF No. 3-13; ECF No. 3, ¶ 13. Nothing about these allegations suggest that Gaskill refused to provide medical care, unnecessarily delayed care or otherwise prevented Plaintiff from receiving care. Accordingly, Plaintiff's Eighth Amendment claims against Gaskill should be dismissed.[3] See Rouse v. Plantier, 182 F.3d at 197.

---

[3] To the extent that Plaintiff alleges that Gaskill refused to give him pain medication on November 4, 2009, and that his Requests to Staff regarding pain medication submitted prior to his fall were ignored, it appears from the documents attached to Plaintiff's Complaint that he, in fact, received 800 mg of Ibuprofen for pain on November 4, 2009, and other pain medication almost continuously since he arrived at the Westmorland County Prison on

### D. CONCLUSION

For the foregoing reasons, is respectfully recommended that the Motion to Dismiss submitted on behalf of Defendants, ECF No. 26, be granted

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

                        Respectfully submitted,

                        /s/ Maureen P. Kelly
                        MAUREEN P. KELLY
                        UNITED STATES MAGISTRATE JUDGE

Dated: May 10, 2013

cc:    The Honorable Terrence F. McVerry
      United States District Judge

      Jeffrow Thomas
      JN-8945
      SCI Huntingdon
      1100 Pike Street
      Huntingdon, PA 16654

---

November 1, 2009. ECF No. 3-17. <u>See</u> ECF Nos. 3-2; 3-3; 3-4; 3-5; 3-11. It therefore appears that Plaintiff's complaint is not that he was *not* receiving pain medication, but rather that he was not being given the pain medication he would have preferred, which, as previously discussed, fails to state an Eighth Amendment claim. <u>Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey</u>, 2012 WL 2374689 at *9; <u>Jetter v. Beard</u>, 130 F. App'x at 526; <u>Hasty v. Johnson</u>, 103 F. App'x at 817-18.

All counsel of record by Notice of Electronic Filing